**UNITED STATES of America,**

v.

**Kevin S. JACKSON, Appellant.**

**No. 02–3895.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit L.A.R. 34.1(a) July 24, 2003.

Decided Aug. 8, 2003.

---

Before ALITO, FUENTES, and BECKER Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

On May 25, 2001, a jury sitting in the United States District Court for the District of New Jersey convicted Kevin S. Jackson ("Jackson") of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. The District Court denied Jackson's motion for a downward departure under Application Note 11 to U.S.S.G. § 2F1.1 and sentenced Jackson to 51 months imprisonment and three years of supervised release. Jackson appeals the denial of his motion for a downward departure. Because we conclude that the District Court recognized its ability to depart and determined that departure was not warranted, we lack jurisdiction to review the denial of the motion.

## I. Background

Between November 1999 and April 2000, Jackson and others placed 25 financial instruments in safe-keeping at First Security Bank of Utah. The notes purported to be Federal Reserve note bonds; however, the notes contained markings indicating that they were issued by the "Emperial Government of Japan." The instruments also had a face value of $100,000,000. Concerned about the validity of the note bonds, employees of First Security Bank contacted the United States Secret Service on or about May 20, 2000.

On May 22, 2000, two Secret Service agents traveled to First Security Bank, determined that the 25 note bonds were fraudulent, and confiscated them. On that same day, the agents informed Jackson and one of his co-conspirators, Dwight Sleight, that the notes were fictitious. Jackson and Sleight replied that a "Mr. Ness" of the Federal Reserve Bank in San Francisco had informed them that the notes were genuine and that several bond traders had confirmed this assessment. Jackson further claimed that two experts from the University of Utah had concluded that the notes were printed on authentic paper.

Jackson failed to inform the agents that he had an additional note that was not in safe-keeping at First Security Bank. Jackson placed the additional note in safe-keeping at Diamond Pacific Bank. He then hired a securities broker affiliated with Advantage Capital Corporation in New York and attempted to redeem the additional $100,000,000 note bond through Pershing, a clearinghouse in New Jersey. Jackson represented to Advantage Capital and Pershing that the Federal Reserve note was authentic. He also submitted a letter through an attorney in which a professor from Utah State University deemed the note bond to be authentic. In the course of its investigation, the government found that no professor by the name of the person who signed that letter worked at Utah State University.

On June 20, 2000, Jackson attempted to obtain an advance of $20,000,000 from Pershing, with the note bond serving as

collateral. The government arrested Jackson three days later. On May 25, 2001, a jury sitting in the United States District Court for the District of New Jersey convicted Jackson of conspiracy to devise a scheme to defraud and to transport counterfeit securities in interstate commerce, and causing two items to be deposited with a private commercial interstate carrier for the purpose of executing the scheme.

On October 3, 2002, the District Court held a sentencing hearing. Both the government and Jackson objected to the Probation Office's determination of a $200,000,000 loss under U.S.S.G. § 2F1.1.[1] The government argued that the loss amount should be $20,000,000 and Jackson argue that it should be no more than $20,000,000. The District Court concluded that the loss amount was $20,000,000. The District Court then denied Jackson's motion for a downward departure under Application Note 11 to U.S.S.G. § 2F1.1 and imposed a sentence of 51 months imprisonment and three years supervised release. Jackson filed a timely notice of appeal on October 11, 2002.

## II. Discussion

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231. As this is an appeal from a judgment and conviction, a final decision of a district court, we have jurisdiction under 28 U.S.C. § 1291. This Court exercises plenary review over the question of whether the District Court applied the proper legal standard in denying a downward departure motion. *United States v. Castano–Vasquez,* 266 F.3d 228, 231 (3d Cir.2001).

Jackson argues that the District Court erred in denying his motion for downward a departure based on his assertion that the loss amount overstated the seriousness of the offense. Specifically, Jackson contends that the District Court failed to evaluate whether the note was so obviously fraudulent that no clearinghouse would seriously consider honoring it and instead relied on his repeated attempts to negotiate the note in concluding that the loss amount accurately reflected the seriousness of the offense.

In relevant part, Application Note 11 to U.S.S.G. § 2F1.1 provides:

In a few instances, the loss determined under subsection (b)(1) may overstate the seriousness of the offense. This may occur, for example, where a defendant attempted to negotiate an instrument that was so obviously fraudulent that no one would seriously consider honoring it. In such cases, a downward departure may be warranted.

U.S.S.G. § 2F1.1. comment (n.11) (West 1998). At the sentencing hearing, the District Court noted that the Defendant "argues that the instrument was obviously fake" due to "glaring typographical errors," "purporting to be worth $100 million," "misspelling the word imperial," and the fact that "the instrument by its own terms had expired at the time" Jackson attempted to redeem it. A518. The District Court then went on to recite the above quoted language from the application notes to U.S.S.G. § 2F1.1.

However, rather than grant a downward departure based on the fraudulent appearance of the note, the District Court recognized that the extent of any downward departure "rests within the discretion of the sentencing court" and that the sentencing court "may examine all relevant conduct" in calculating the loss amount. A519. The District Court concluded that the loss amount did not overstate the seriousness of the offense given Jackson's "ac-

---

1. Jackson's sentence was calculated under the 1998 edition of the United States Sentencing Guidelines.

tions, including his repeated vouching for the legitimacy of the bonds ... in his attempt to obtain the entire $20 million." *Id.*

Based on these statements, we conclude that the District Court understood the basis for Jackson's motion for a downward departure and recognized its ability to depart under Application Note 11 to U.S.S.G. § 2F1.1. This Court "lack[s] jurisdiction to review a refusal to depart downward when the district court, knowing it may do so, nonetheless determines that departure is not warranted." *Castano–Vasquez*, 266 F.3d at 231 (internal quotations and citation omitted). The District Court in this case determined that, pursuant to U.S.S.G. § 1B1.3(a), departure was not warranted given Jackson's "relevant conduct," his insistence that the note bond was legitimate in his attempt to secure $20 million. Application Note 11 to U.S.S.G. § 2F1.1 contains an example of when a loss determination "may" overstate the seriousness of the offense and a downward departure "may" be warranted. U.S.S.G. § 2F1.1. comment (n.11) (West 1998). Application Note 11 does not require that a district court depart downward. Thus, even if the District Court had determined that Jackson's note bond "was so obviously fraudulent that no one would seriously consider honoring it," the District Court would not have been obligated to depart downward. *Id.*

We conclude that the District Court exercised its discretion in denying Jackson's motion for a downward departure. As a result, we lack jurisdiction to review its decision to do so.

### III. Conclusion

Accordingly, for the reasons stated above, we dismiss the appeal.